**In re Scott L. SKAKALSKI and Naomi J. Skakalski, Husband and Wife, Debtors.**

**Bankruptcy No. 82–00444E.**

United States Bankruptcy Court, W.D. Pennsylvania.

Dec. 3, 1986.

Margaret T. Lucas, Greenville, Pa., for debtors.

Warren R. Keck III, Greenville, Pa., Trustee.

Henry E. Sewinsky, Sharon, Pa., for First National Bank of Mercer County.

## OPINION

WARREN W. BENTZ, Bankruptcy Judge.

The issue is whether this closed Chapter 7 estate should be reopened, and if reopened, whether Debtors' motion for lien avoidance should be allowed or denied. The case was originally filed on July 26, 1982 and closed as a no-asset case January 5, 1983. On February 11, 1985, Debtors' counsel filed its Motion to Reopen the case for the purpose of filing a Motion to Avoid Liens. That motion was refused, without prejudice, since the motion failed to allege sufficient facts to show that the Debtors would be entitled to lien avoidance relief even if the case were reopened. March 13, 1985 Debtors filed an Amended Motion to Reopen on which a hearing was held. On June 26, 1985 the Debtors' motions were refused for failure to state facts upon which relief could be granted, with leave to amend. July 17, 1985 Debtors filed a Second Amended Motion to Reopen. July 26, 1985 the Court entered an Order reopening the proceedings, without prejudice to a reconsideration thereof after fully developing the facts. A hearing was held October 17, 1985 at which depositions of the parties were offered and the case was submitted to the Court on the depositions by the parties.

This Court's Order of June 26, 1985 refusing Debtors' "Motion to Reopen" and Debtors' "Amended Petition to Reopen" for failure to allege facts upon which relief could be granted, allowed Debtors 20 days in which to properly state facts which would support their Motion for Lien Avoidance. This was followed by Debtors' "Second Amended Petition to Reopen" which was not filed until July 17, 1985, thus raising a question as to whether Debtors' motion should be dismissed for failure to follow the reasonable time requirements established by the Court.

The Second Amended Petition to Reopen finally alleged, after much prodding by the Court, the value of the real estate ($22,500) and the amount of the unavoidable mortgage ($16,750.55). The allegations of the Second Amended Petition to Reopen were neither denied nor admitted, the Respondent relying on Bankruptcy Rule 9014, since no answer had been ordered by the Court. The Respondent did note that the Second Amended Petition to Reopen was not timely filed.

The facts are as follows. The First National Bank of Mercer County (the "Bank") held a mortgage on the Debtors' residential real estate. The Debtors' Second Amended Petition to Reopen alleges that the value of this residential real estate was $22,500 and that the amount due on the Bank's unavoidable mortgage was $16,750.55 at the time of the filing of the bankruptcy petition. The bankruptcy schedules indicate identical amounts, but the bankruptcy schedules were not made a part of the record. There was no testimony in the depositions as to the property value or the amount of the mortgage loan, except Attorney Michael Halliday's testimony on examination by the Bank's attorney that "I had a feeling that the property value was close to the mortgage amount. Mrs. Skakalski had no idea of the value at all, but I think he and I discussed it and he felt it had a figure of 24, 22 [i.e., $24,000, $22,000]. I felt, I think, at that time—I think—I just looked at my notes. They have a value of $16,000, a balance of $16,000. I felt that the value of the property was about that."

This testimony was elicited by the Bank's attorney which would have been in the nature of cross-examination. While the testimony is meager, it is uncontested by the Bank.

The Bank had three claims against the Debtors; one was a mortgage secured by the residence, the second was a loan secured by two vehicles, and the third was a personal loan secured by a lien on the

residence obtained by the filing of a judgment note as a judgment in the Court of Common Pleas of Crawford County as of No. 103 DSB 1980. The mortgage and the judgment were the only liens on the residence. The Debtors apparently did not know that judgment had been entered on the note and thought that the loan was unsecured. Debtors' counsel apparently did not check the court house records and did not know that the note was entered as a judgment. The bankruptcy schedules show the personal loan obligation as an unsecured debt rather than as a secured debt. Debtors' counsel proceeded in the matter as though the personal loan was an unsecured loan.

Several months after the filing of the bankruptcy, the Debtors entered into a reaffirmation agreement with the Bank under which the mortgage was reaffirmed and approximately six monthly payments which were delinquent were added to the tail-end of the mortgage payments. The Debtors surrendered to the Bank the two motor vehicles which were subject to the Bank's lien. Debtors' counsel attempted to establish by testimony of the Debtors and himself that the personal loan was negotiated with the Bank, and the Bank had agreed not to revive its judgment when its five year life expired under state law and the liability therefor would be barred by the discharge and the lien would have expired. However, the testimony did not measure up to such a specific showing. It is clear that the Bank took the reaffirmation agreement of the Debtors as to the mortgage and the Debtors certainly could have believed that there was no further obligation on the personal loan. We have then a situation where the Bank negotiated with the Debtors and their counsel for a reaffirmation of a mortgage debt while at the same time being aware of, but not disclosing to the Debtors and their counsel, that it was holding a judgment lien on the same property, and knowing also that payment on the first mortgage would enhance the value of the judgment lien and knowing also that by not raising the issue and allowing time to pass, the Debtors would also

have greater difficulty reopening the bankruptcy case in order to avoid such lien, and also knowing that such lien was fully avoidable if the issue were promptly raised. From the time of the bankruptcy in 1982 until the Bank revived its lien in 1985, the Bank gave no notice to the Debtors that any payment was due on the personal loan or that there was a judgment outstanding which the Bank expected to be paid.

Several questions are presented by this set of facts. Should a judgment creditor be allowed to "lie in wait" hoping that a debtor will not exercise its right to avoid the judgment lien until a time when a court will say that the debtor waited too long? May the judgment creditor's good faith be questioned where the judgment creditor negotiated a reaffirmation and an extension of payments on its first mortgage where it also held an avoidable judgment lien on the same property? Is there a statute of limitations or some time period within which a debtor is obligated to bring his lien avoidance motion, or be barred by lapse of time? Should the debtors be barred from relief because they waited more than the 20 days allowed by the court for the filing of an additional amended motion for lien avoidance? Should the debtors be barred from relief because their attorney failed to correctly examine the lien docket in the handling of the bankruptcy matter?

 This court will resolve these various questions by allowing the lien to be avoided at this time. Neither the statute nor the rules fix any statute of limitations for the filing of a motion for lien avoidance. Other cases have held that there is a time limit. See *In re Robert Lee Williams*, 17 B.R. 204 (Bkrcy.W.D.Ky.1982); *In re Ridill*, 1 B.R. 216 (C.D.Cal.1979). In some districts, local rules have been enacted fixing a rather short time limit. The better view however is enunciated by *In re Yazzie*, 24 B.R. 576 (Bkrcy.App.Panel, 9 Cir., 1982) in which the Bankruptcy Appellate Panel extensively analyzed the cases, with citations thereof, and held that no time limit is prescribed by the Code, rejecting cases to the contrary, provided the creditor has not been

prejudiced by the delay. See also *In re Hall*, 22 B.R. 701 (Bkrcy.E.D.Pa.1982); *In re Gene Haywood Russell*, (20 B.R. 537 in the within Court; Gibson, J.). We find no prejudice to the creditor here.

Some cases have held that the matter is within the discretion of the Bankruptcy Judge. *In re Serafini*, 41 B.R. 880, D.C., W.D.Pa.). To the extent that this court has discretion, we will exercise that discretion by allowing the Motion for Lien Avoidance to proceed.

This court also relies upon § 350(b) of the Bankruptcy Code which provides that "A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." Such language appears to be a clear and specific grant of a right to the debtor and a direction to the Court, or a grant of permission to the Court to reopen a case to accord to the debtor the relief contained in the Bankruptcy Code, and is applicable in this instance.

The merits of the motion for lien avoidance are clear. The judgment in question may be avoided under § 522(f) of the Bankruptcy Code since it impairs Debtors' exemption in their residence, it having a value of not more than $24,000, subject to a first mortgage of $16,750.55, which is unavoidable.

A troubling aspect of this case is the ineptness of counsel, first in failing to properly examine the affairs of the Debtors in filing the bankruptcy petition and hence, being unable to properly represent the Debtors in negotiations with the Bank, and then having to be prodded repeatedly by the court to include the necessary allegations in its lien avoidance motion. Notwithstanding those failures, the court does not deem it appropriate to allow a result different from that provided by the applicable law.

For the reasons stated, the lien avoidance motion will be granted by separate order.