**In re William S. YOUNG, Debtor.**

**Bankruptcy No. 79–01941K.**

United States Bankruptcy Court,
E.D. Pennsylvania.

March 16, 1987.

---

Alan M. White, Community Legal Services, Philadelphia, Pa., for Pricilla Ford.

Lawrence T. Phelan, Frank Federman, Philadelphia, Pa., for Fidelity Consumer Discount Co.

James J. O'Connell, Philadelphia, Pa., for Standing Chapter 13 Trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

The instant Motion to reopen the above-captioned bankruptcy case filed by one PRISCILLA[1] FORD (referred to hereinafter as "the Movant") presents two (2) issues in an unusual factual matrix, which makes what are both essentially simple legal issues appear to be close questions. The first issue relates to the standing of a successor-in-interest of property of a debtor to file such a Motion. Assuming that we reach it by finding standing, the second issue relates to the standards which should be applied in determining whether to exercise our discretion to reopen a previously-closed case.

We hold that the concept of standing should be very broadly construed in a bankruptcy, and therefore that a person having such a significant interest in an asset which was part of the debtor's estate as the moving party here has standing to file a Motion to reopen the case. We further hold that we should exercise our discretion to reopen a case broadly, and grant such motions unless it is established on the record that the moving party, or parties with which the moving party is in privity, have been guilty

of fraud or intentional design in allowing the case to be closed, as it were, prematurely. Finding no such elements present here, we shall grant the Motion before us.

The age of this case is revealed by the fact that it was filed just after the October 1, 1979, effective date of the Bankruptcy Code, on October 16, 1979, under Chapter 13 of the Code. Filed at the immediately succeeding number, and consolidated therewith, at Bankruptcy No. 79–01942WK, was the case of the late ELOISE McCALL, also known as ELOISE YOUNG McCALL, apparently the wife of the Debtor in this case, WILLIAM A. YOUNG. Counsel for both Debtors was S. Simpson Gray, whom we note was subsequently suspended from the practice of law. *See Office of Disciplinary Counsel v. Gray,* No. 447 Disciplinary Docket No. 2, Disciplinary Board No. 62 DB 84 (Pa., Order filed Sept. 7, 1984).

The case moved through our Court at a sluggish pace. A Plan was not confirmed until August 26, 1980. Over a year after Confirmation, on October 27, 1981, we note that the party opposing the instant Motion, FIDELITY CONSUMER DISCOUNT COMPANY (hereinafter referred to as "Fidelity"), filed, as was at that time the proper procedural device to do so, an Adversarial Complaint, at Adversarial No. 81–1495K, seeking relief from the automatic stay against the Debtor in this case and Ms. McCall, in order to proceed to foreclose against the home owned by the Debtor and Ms. McCall at 5246 Diamond Street, Philadelphia, PA 19131. A judgment by default was entered in that case on November 30, 1981, when Mr. Gray failed to file an answer on behalf of the Defendants. Thereafter, Mr. Gray filed a "Motion for New Trial and Stay Pending Hearing," but this was ultimately denied and an appeal subsequently taken by Mr. Gray was apparently not pursued.

Nothing significant occurred thereafter in this Court until February 12, 1985, when a Discharge Order was entered. The main case was not closed until March 12, 1986.

---

1. Although the papers presented in this case spell her name "Pricilla," the Movant spelled her name in the more conventional method of "Priscilla."

The Adversarial Case was not closed until August 22, 1986.

Meanwhile, as we noted per the Docket Entries of same entered into evidence at the hearing on this Motion, an action in Mortgage Foreclosure was commenced in the Philadelphia Court of Common Pleas on January 28, 1982, at January Term, No. 3893, against the Debtor, Ms. McCall, and "Timikia Eloise J. Ford," [2] Real Owner of the property. As it developed, Mr. Young and Ms. McCall had conveyed the Diamond Street property to Timickia Ford, their step-granddaughter and granddaughter, respectively, now aged twelve (12) years, on July 3, 1980. Although the principal balance on the mortgage was allegedly but $243.13, the pay-off of the loan, per a letter from Fidelity's Counsel to the Movant's Counsel of May 28, 1986, was quoted as $3,006.28, swollen by costs and attorneys fees of various sorts. The judgment taken in the foreclosure suit, meanwhile, in the amount of $7,382.36.

The instant Motion was filed on December 17, 1986, by the Movant, who alleged that she was the child of Ms. McCall, the step-daughter of the Debtor, the mother of Timickia, and the head of the family presently in residence in the Diamond Street property. Attached to the Motion was an Adversarial Complaint which Ms. Ford, as guardian of her daughter, proposed to file in this case if it were reopened, contending that the foreclosure action was illegal due to the fact that the Debtor's consummated Chapter 13 Plan contemplated payment of the Fidelity debt in full. Fidelity was the only party to answer and oppose this Motion.

The Motion came before us for a hearing on January 28, 1987. Ms. Ford was the only witness. In addition to reciting the foregoing undisputed facts, she testified that she did not know the whereabouts of the Debtor, despite her attempts to locate him to file the instant Motion, and that she had last seen him "on the street" about a year previously. The Court found her testimony, as inconclusive as it was, entirely credible, as she would have lightened her standing burden had she been able to in fact locate the Debtor, and there is no reason to think that the Debtor would not have wished to assist the beneficiary of their conveyance, Timickia.[3]

In an Order of January 29, 1987, we directed the parties to file Briefs on or before February 11, 1987, and February 25, 1987, respectively. After review of same, and some independent research, we are prepared to render our decision.

The standing issue is practically ignored by Fidelity in its Brief, perhaps because of a recognition that an argument to the contrary would be futile. As Bankruptcy Rule 5010 provides, "[a] case may be reopened on motion of the debtor *or other party in interest* pursuant to § 350(b) of the Code." (emphasis added). *See* 2 COLLIER ON BANKRUPTCY, ¶ 350.03[2], at 350–13 at 350–15 (15th ed. 1986).

We have had one occasion to address the issue of the standing of a party to raise certain issues under the Code, in *In re Morrison*, 69 B.R. 586, 589 (Bankr.E.D. Pa.1987). In that case, a party whom we classified as a general unsecured creditor filed an objection to the Proof of Claim of a secured creditor, ostensibly pursuant to § 502 of the Code, but in substance pursuant to § 544 of the Code. *See id.* at 589–90. Although § 502(a) provides that any "party in interest" can object to a claim, we noted a considerable body of law which

---

**2.** The name of this young lady is variously spelled by the parties as "Timikia" and "Tamikia." When asked, the Movant, her mother, spelled her name "Timickia," and that is therefore how we have spelled it.

**3.** We are preparing this Opinion in narrative form, because there are few, if any, disputed material facts. Furthermore, per Bankruptcy Rules 9014 and 7052 and Federal Rule of Civil Procedure 52(a), we believe that we have complete discretion in determining whether we wish to prepare an Opinion in the form set forth in Rule 52(a) or even need prepare an Opinion at all in deciding a motion. *See In re Campfire Shop, Inc, Barone v. Strouse, Greenberg Mortgage Co., et al.,* 71 B.R. 521, 524–25 (Bkrtcy., E.D.Pa.1987).

appeared to limit the right to object to claims to the Trustee. *Id.* at 589. On the other hand, the "strong arm" powers of the Trustee set forth in § 544 are, with the exception of instances within the scope of §§ 522(h) and (g)(1), expressly restricted to the Trustee himself. *Id.* at 589–90. Nevertheless, we concluded there that the objecting creditor in fact *did* have standing to proceed, stating as follows: "Unless the Code is clear in stating otherwise, we believe it just to accord any party expending the time and financial resources to raise a claim the opportunity for a disposition on a less technical basis." *Id.* at 589.

Very significant to this ruling was our consideration of the result in the recent Third Circuit Court of Appeals decision in *In re McKeesport Steel Castings Co.,* 799 F.2d 91, 94, 93 (3d Cir.1986), wherein the Court of Appeals concluded that interested creditors could act "in lieu of the trustee" in invoking § 506(c) of the Code. We have no reason to suspect that the Court of Appeals would rule differently in considering a standing question under § 350(b). *Compare In re Amatex Corp.,* 755 F.2d 1034, 1042 (3d Cir.1985) (standing is determined by ascertainment of whether "the prospective party in interest has a sufficient stake in the outcome" for purposes of 11 U.S.C. § 1109(b)).

We note that Ms. Ford and her daughter clearly have a sufficient "personal stake in the outcome" of this controversy to meet the Article III definition of "making out a case or controversy." *See Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). We also note that those few cases specifically presenting an issue of standing under § 350(b) and its precedessor provision under the Act have read this statutory provision broadly. *See Miller v. Shallowford Community Hospital,* 767 F.2d 1556, 1559 n. 4 (11th Cir.1985) (creditor permitted to reopen case to adjudicate whether post-petition insurance proceeds were property of debtor's estate); and *In re Minners,* 253 F. 300 (S.D.N.Y. 1918) (purchaser of real estate from trustee permitted to reopen case).

Although we do concede that the interest of Ms. Ford is difficult to categorize, as she is neither Trustee nor debtor nor creditor, the best description of her status is that she is a representative of the successor-in-interest to the most significant asset in what had been the Debtor's estate. The legal rights of Fidelity and Timickia would undoubtedly be proper fare for this Court to determine if the case had not been closed. We therefore hold that Ms. Ford has standing to reopen it.

■ We would observe that there is no such analogous Third Circuit guidance and somewhat of a split of authority elsewhere on the issue of the standards to be applied by a bankruptcy court in determining whether to exercise its discretion to reopen a case. The pertinent Code section, § 350(b), provides that this Court "may" do so "to administer assets, to accord relief to the debtor, or for other cause." The most recent and instructive Third Circuit Court of Appeals decision that we could locate is *In re Becker's Motor Transportation, Inc.,* 632 F.2d 242, 245 (3d Cir.1980), in which the Court, applying the Act, affirmed the exercise of a bankruptcy court's "broad discretion to reopen cases after an estate has been administered."

The appellate decision from another circuit which we are most inclined to follow is *In re Stark,* 717 F.2d 322 (7th Cir.1983). In that case, the court held that it would allow a case to be reopened as long as "there is no evidence of fraud or intentional design on the part of the party seeking to reopen it." *Id.* at 324. The *Stark* rule, which encourages liberality in granting motions to reopen, appears to us to be totally consistent with the reasoning of our local Court of Appeals in *Becker,* and the Eleventh Circuit Court of Appeals in *Miller, supra,* 767 F.2d at 1559 n. 4.

We do acknowledge that the *Stark* holding may be viewed as being, to a certain degree, disputed by the 2–1 majority decision of the Fourth Circuit Court of Appeals in *Hawkins v. Landmark Finance Co.,* 727 F.2d 324 (4th Cir.1984). Although the *Hawkins* majority adopts the rule that it is

largely in the discretion of the bankruptcy court as to whether a case should be reopened, it proceeds to affirm a bankruptcy court decision with which we could not agree, i.e., that a motion to reopen should be denied because the debtors delayed eight months in seeking to reopen their case and the creditor suffered "prejudice" by expending funds on a foreclosure proceeding in state court in the interim between the case closing and the filing of the motion to reopen. Like the dissenting judge in *Hawkins*, we do not believe that "the incurrence of court costs and counsel fees ... constitutes prejudice in the legal sense so as to provide a sufficient basis for the bankruptcy court to exercise its discretion in favor of not reopening the case." Of course, the *Hawkins* majority acknowledged the fact that it was merely sustaining the bankruptcy court's exercise of discretion, not endorsing this decision as the one it would have reached had its scope of review been plenary.

We note that an aura of liberality and a willingness to accept the reasoning of the *Stark* case has pervaded almost all of the Third Court lower court decisions in this area. *See Noble v. Yingling,* 37 B.R. 647 (D.Del.1984) (bankruptcy court's denial of debtors' motion on ground that prejudice to creditor arose as a result of intervening lawsuit reversed); *In re Skakalski,* 67 B.R. 448 (Bankr.W.D.Pa.1986) (motion to reopen granted despite series of delays and errors attributable to movant's counsel); *In re Ali,* 58 B.R. 539 (Bankr.E.D.Pa.1986) (*Stark* test specifically approved by former Chief Judge Goldhaber); *In re Davidson,* 36 B.R. 439 (Bankr.D.N.J.1983) (*Stark* cited with approval in granting motion to reopen despite expenditures by creditor intervening between case closing and filing of motion to reopen); and *In re Hall,* 22 B.R. 701, 702 (Bankr.E.D.Pa.1982) (present Chief Judge Twardowski holds that motion to reopen should be granted unless "equitable considerations ... dictate otherwise"). *But see In re Serafini,* 41 B.R. 880 (Bankr.W.D.Pa.1984) (motion to reopen disallowed where it was filed over six months after *second* closing of case and

creditor objected). We therefore agree, with the weight of authority and the reasoning of such cases as *Davidson,* 36 B.R. at 544; and *In re Mitchell,* 47 B.R. 209, 211 (Bankr.N.D.Tex.1985), that the only reasoning consistent with the "fresh start" principles of *Local Loan Co. v. Hunt,* 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934), is the adoption of the *Stark* test, which would allow any motion to reopen except where fraud or intentional design on the part of the moving party or those in privity to him or her is established.

We also note that, in the wake of *Hawkins,* a split of authority has developed over whether, if a motion to reopen is allowed in the face of expenditures by the creditor to exercise rights which the motion to reopen seeks to affect, the moving party should be compelled to pay those costs as a condition of the granting of the motion. *Compare In re Ricks,* 62 B.R. 681 (Bankr. S.D.Cal.1986) (party seeking to reopen should not necessarily bear costs), *with Noble, supra;* and *Davidson, supra* (moving party required to bear such costs).

■ In the instant case, we find no evidence whatsoever of fraud or intentional design on the part of the Debtor, the moving party, or of course Timickia. We note that only a period of less than four months and about nine (9) months, respectively, elapsed between the date that the pivotal adversarial case and the main case were closed and the date that Ms. Ford filed her motion to reopen this case. We acknowledge that Fidelity has expended considerable costs in pursuit of the property in issue. However, we further must make two observations relevant to the expenditures incurred by Fidelity here, as opposed to those incurred in most of the above-cited cases. First, the expenditures preceded the closing of both the main case and the adversarial case, unlike the sequence of events in such cases as *Hawkins, Noble,* and *Davidson.* Clearly, unlike those cases, we are not here presented with a case in which a totally innocent creditor, unaware that a bankruptcy affecting its interests existed, expended funds on collection of a claim

which it had no reason to think was impeded by a bankruptcy. Secondly, the expenditures here of over $2,700.00 appear to be an unreasonable outlay to collect a principal debt of but $243.23. We will not, as a court of equity, serve those who seek to prey on the unfortunate, especially those who are doubly unfortunate in being "represented" by errant counsel. Although we are not yet presented with the merits of this case, and express no opinion on them at this time, what glimpse we have had of the merits of this matter thus far convinces us that applying equitable principles of any sort in favor of Fidelity would not only be misplaced, but would be likely to effect the turning of equitable principles against the parties whom the equities appear to favor.

Given the equities here, we cannot picture any court, even if it strictly follows the *Hawkins* majority on the issue of when it is permissible for a bankruptcy court to exercise its discretion to deny a motion to reopen and even if it follows *Noble* and *Davidson* in conditioning the granting of a motion to reopen on payment of costs and fees incurred by a creditor where the equities justify it, ruling other than in favor of granting the instant motion. The cases cited by Fidelity present facts which were, to put it mildly, distinct from those of the instant case on crucial matters of fact and hence equities. *Compare Saper v. Viviani*, 226 F.2d 608 (2d Cir.1955) (motion to reopen filed nineteen years after closing); and *In re Fair Creamery Co.*, 193 F.2d 5 (6th Cir.1952) (second reopening sought over six years after original closing of case).

We shall therefore grant the Motion of Priscilla Ford to reopen her father's bankruptcy case and allow her to file the Adversarial case attached as an exhibit to her Motion in an accompanying Order.