In re Preston BURCH, Jr., Debtor.

In re Delores MORTON, a/k/a Delores Burch, Debtor.

Preston BURCH, Jr. and Delores Morton, a/k/a Delores Burch, Plaintiffs,

v.

FEDERAL NATIONAL MORTGAGE ASSOCIATION, and Samuel R. Pierce, Jr., Defendants.

Bankruptcy Nos. 82–05835S, 83–02646K. Adv. No. 83–2067S.

United States Bankruptcy Court, E.D. Pennsylvania.

July 8, 1988.

$1,000 per month which was later increased to $1,200 per month. N.T., 9, 24.

Autherine B. Smith, Community Legal Services, Inc., Philadelphia, Pa., for debtor.

Gary McCafferty, Philadelphia, Pa., for FNMA.

Edward Sparkman, Philadelphia, Pa., standing Chapter 13 trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

Although neither of the parties has so framed the issue, we believe that the matters before us in this adversary proceeding present the question of whether a mortgagee can utilize a judgment obtained as a result of defaults in the mortgage preceding a settlement as the basis for enforcement of its rights when the mortgagor subsequently defaults on the settlement terms. We hold that the mortgagee cannot do so for several reasons, most notably because to do so would violate the mortgagor's rights under certain state laws regulating mortgage foreclosures, *i.e.*, Act No. 6 of 1974, 41 P.S. § 101, et seq. (hereinafter referred to as "Act 6"), and Act No. 91 of 1983, 35 P.S. § 1680.401c, et seq. (hereinafter referred to as "Act 91"), and the mortgagor's rights under the Due Process Clauses of the fifth and fourteenth Amendments to the United States Constitution. We therefore shall grant the Debtor's motion to reopen this proceeding and enjoin the mortgagee from proceeding with a foreclosure, although the muddled state of the parties' rights causes us to refrain from holding the mortgagee in contempt of court for its actions, as the Debtor also urges.

On May 20, 1988, DELORES BURCH, a co-plaintiff in the adversary proceeding before us and the Debtor in Bankruptcy No. 83–02646K (hereinafter referred to as "the Debtor"), one of the cases underlying this proceeding, filed the instant motion seeking to reopen her bankruptcy case and this adversary proceeding, to obtain an injunction of a foreclosure sale, and to hold her mortgagee, FEDERAL NATIONAL MORTGAGE ASSOCIATION (hereinafter referred to as "FNMA"), in contempt of court. Since the Debtor's residential realty was listed for a sheriff's sale on June 6, 1988, and this court was unavailable from May 27, 1988, through June 6, 1988, we scheduled an expedited hearing on the motion on May 26, 1988. At that time, the parties advised that the sheriff's sale had been stayed until July 11, 1988, and that they wished to present the matter on a Stipulation of Facts to be filed on or before June 3, 1988, and Briefs to be filed on or before June 15, 1988, and June 24, 1988, by the Debtor and FNMA, respectively. On June 24, 1988, FNMA advised us that the parties had agreed that it could have an extension to June 28, 1988, to file its Brief in light of its agreement to stay the sheriff's sale until September 12, 1988. We allowed this request.

The parties' Stipulation of Facts tells us that, on November 3, 1982, FNMA commenced a mortgage foreclosure action against the Debtor and Preston Burch, Jr. (hereinafter referred to as "Burch"), apparently her husband and co-owner of the

mortgaged premises (hereinafter the Debtor and Burch shall be referred to as "the Mortgagors"), situated at 2950 North 6th Street, Philadelphia, Pennsylvania (hereinafter referred to as "the Premises"), in the Philadelphia Court of Common Pleas at November Term, 1982, No. 482. A default judgment was entered against the Mortgagors on November 27, 1982.

On December 6, 1982, Burch filed a bankruptcy petition pro se at Bankr. No. 82–05835K in this court. Nevertheless, a sheriff's sale of the Premises took place on January 3, 1983, at which the Premises was sold for a bid price of $2,162.04. Pursuant thereto, on January 19, 1983, the United States Department of Housing and Urban Development (hereinafter referred to as "HUD") obtained a sheriff's deed to the premises.

On June 29, 1983, the Debtor filed her bankruptcy case. Her counsel commenced representation of Burch as well. His case, dismissed on June 29, 1983, was reopened and consolidated with that of the Debtor.

Together, on August 19, 1983, the Debtor and Burch filed this adversary proceeding, the Complaint in which sought to set aside the sheriff's sale of January 3, 1983, as violative of, alternatively, 11 U.S.C. §§ 549(a), 362(a), or 548(a).

It is difficult to explain why, but this proceeding apparently lingered in limbo for over two years until January, 1986, when the parties entered into a Stipulation settling it, ultimately approved by our predecessor, the Honorable William A. King, Jr., on January 30, 1986. The entire text of this Stipulation is brief enough to quote, as follows:

(1) the Sheriff's Sale of January 3, 1983, of the subject premises, 1822 N. Vogdes Street, Philadelphia, PA 19133 [sic] is null and void as is the Sheriff's Deed which purportedly transferred the property to Defendant HUD;

(2) the term of years of the mortgage which was the subject of the above-referenced foreclosure and sale of the subject premises is hereby extended until December, 1988;

(3) Debtor shall resume monthly payments of $199.90 on November 1, 1985 until the expiration of the term of the mortgage; said payments representing $173.90 in principal and interest and $26.00 in escrow payments pursuant to the terms of the mortgage;

(4) Debtor shall pay to Defendant, Federal National Mortgage Association, the amount of $1400.00 on or before December 1, 1985;

(5) Defendant HUD shall deed the subject premises to the Debtor and the lien priority of Defendant Federal National Mortgage Association's first mortgage will remain as if no Sheriff's Sale occured [sic].

The Stipulation of Facts of the parties goes on to state that the Debtor paid the $1,400.00, but made only three installment payments, totaling $600.00, thereafter. FNMA apparently retained the deed executed by HUD until June 3, 1988, after this motion was filed, at which time they released it to the Debtor's counsel. FNMA refused to accept further payments and listed the property for sheriff's sale on the basis of the judgment obtained on November 27, 1982, in the foreclosure proceeding commenced on November 3, 1982.[1]

The initial issue which the parties dispute is whether the Debtor's bankruptcy case and this adversary proceeding should be reopened. The Docket Entries reveal that Burch's case was voluntarily dismissed on June 21, 1985, and closed on March 5, 1986. The Debtor's case was converted from Chapter 13 to Chapter 7 on January 22, 1985, and closed on August 14, 1985, after the Debtor was discharged. The adversary proceeding was closed on March 14, 1986. As we point out below, this sequence is, in itself, puzzling.

---

1. Interestingly, this most significant fact that the sale was based on the November, 1982, judgment is not expressly recited in the Stipulation and can be at best inferred through examination of the parties' briefs. The published advertisement of the sale, however, confirms that this judgment is the basis of the sale, as did counsel for FNMA in a brief colloquy in open court on June 30, 1988.

The Code section controlling the issue of whether this matter should be opened is 11 U.S.C. § 350(b), which states as follows:

(b) A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause.

The Debtor argues that the reopening of these matters is for the express purpose of "according relief to the debtor" to which she is entitled pursuant to this court's Order of January 30, 1986, approving the Stipulation settling the adversary case. FNMA counters that the request to reopen should be denied because of the "long delay involved," pointing out that the Debtor's main bankruptcy case had been closed since August 14, 1985.

FNMA's observation raises an interesting point: the Debtor's main bankruptcy case was closed before the time that the Stipulation and Order resolving the adversary proceeding were entered. Clearly, a proper sequence of the case closings should have required that both main cases remain open until the adversary proceeding attached to them was closed. *See In re Stardust Inn, Inc.*, 70 B.R. 888, 890 (Bankr.E.D.Pa.1987). However, we do not think that any real significance can be placed upon the purely ministerial clerical error which altered this sequence. We can only observe that the more significant date, for purposes of measurement of the factor of time in isolation from other factors, is March 14, 1986, when the adversary proceeding was closed and before which date the Debtor's main case should not have been closed.

In any event, we are not inclined to place any particular significance on the mere lapse of time between a case closing and the filing of a motion to reopen. Events related to a bankruptcy case or proceeding may not occur until years after the proceeding has been closed. An example of this would be a violation of a bankruptcy discharge injunction, pursuant to 11 U.S.C. §§ 524(a)(2) or (a)(3), which could occur years after a case was closed and yet over which a bankruptcy court could properly exercise jurisdiction.

A more significant issue is whether the issue raised has a close nexus to the bankruptcy case in issue or the Bankruptcy Code. Even a related matter, based on state law, can serve as the basis for the exercise of bankruptcy jurisdiction. The elements of judicial economy and fairness to litigate can justify a bankruptcy court's continuing exercise of jurisdiction by reopening an adversary proceeding even if the underlying case has been closed and the matter is simply a related proceeding. *See Stardust Inn, supra,* 70 B.R. at 890–91.

Another important consideration in deciding whether to grant a motion to reopen is whether there has been an unreasonable delay between the precipitating event and the filing of the motion. We note that, even in cases where there has been a significant lapse of time by a debtor in raising an issue which could have been raised at the time that the case was open but was merely overlooked, as in *In re Quackenbos*, 71 B.R. 693 (Bankr.E.D.Pa.1987); *In re Skakalski*, 67 B.R. 448 (Bankr.W.D.Pa.1986); and *In re Ali*, 58 B.R. 439 (Bankr.E.D.Pa.1986), such motions have been granted.

We believe that the instant matter presents a good example of a precipitating event which did not arise and could not have been foreseen at the time that the adversary proceeding was closed on March 14, 1986. There is no evidence in the record indicating when the Debtor learned that FNMA was attempting to conduct a sheriff's sale of her home on the basis of the November, 1982, foreclosure judgment. Hence, it is quite possible that this did not occur until shortly before the instant motion was filed.

Because our analysis on the merits of the Debtor's motion does not implicate the Bankruptcy Code, see pages 692–694 *infra,* there is a rather close question as to whether we should extend our jurisdiction to decide this controversy. Certainly, it is not the province of the bankruptcy courts to adjudicate every post-closing dispute which arises between a debtor who has

raised and resolved certain issues between herself or himself and a creditor in the bankruptcy court, even if the issue had been previously addressed by the bankruptcy court. Here, however, the creditor does not object to our exercise of jurisdiction. We shall therefore act, in the interests of economy and fairness to the litigants, rather than *sua sponte* relegating them to the state courts.

The decision which we believe presents facts very close to those presented here is *In re Young*, 70 B.R. 968 (Bankr.E.D.Pa. 1987). There, the successor-in-interest of property of a debtor's estate was permitted to reopen the debtor's bankruptcy case to file an adversary proceeding to attack an allegedly unconscionable attempt to sell the property. We note that the movant there had to overcome a serious standing problem, causing the relation of that matter to an underlying bankruptcy case to be in one sense even more tenuous than that here. Furthermore, ultimately, we did not sustain the merits of the claims of the movant there in the adversary proceeding. *See In re Young*, 76 B.R. 504 (Bankr.E.D.Pa. 1987).

Nevertheless, we allowed the *Young* movant to reopen the case to litigate her claims. In that case, we held that motions to reopen should be granted unless the moving party were chargeable with "fraud or intentional design" in not raising the matter for which the matter was sought to be reopened before the case had been closed. This conclusion suggests that delay, in itself, will rarely be a ground for denying a motion to reopen. However, we did state that it is a factor in weighing the equities of the parties in determining whether the motion to reopen should be conditioned on the movant's paying the costs incurred by other interested parties as a result of the movant's failure to raise, in timely fashion, the matter for which the case is sought to be reopened. 70 B.R. at 972–73.

We believe that the equities here are similar to those in *Young*. We do not believe that FNMA was totally innocent, and we believe that it should have foreseen the legal impediments which we find herein existed in its proceeding as it did on the November, 1982, judgment. We again note that there is no evidence that the Debtor delayed inordinately in presenting this motion after she first became or could have reasonably become aware of the efforts of FNMA to utilize the November, 1982, judgment as a means to foreclose on her home.

Therefore, we have decided to exercise our discretion to grant the Debtor's motion to reopen both bankruptcy cases and the adversary proceeding. We believe, on authority of *Young*, 70 B.R. at 970–71, that the Debtor has standing to reopen Burch's case. We also conclude that, under the circumstances, it would not be equitable to require the Debtor to reimburse the costs expended by FNMA in pursuing execution on the November, 1982, judgment as a condition for granting the motion to reopen.

 The Debtor's entire argument on the merits is based upon what she characterizes as an issue "of first impression: that is, what are the rights of an 11 U.S.C. § 548(c) lienholder after the conclusion of a bankruptcy case?" Plaintiff–Debtor's Memorandum of Law in Support of Motion to Reopen Her Bankruptcy Case and the Above–Captioned Adversary Proceeding and to Hold Federal National Mortgage Association in Contempt of the Court's Order of January 30, 1986, and to Obtain an Injunction, at 1. The Debtor suggest that the answer to this question is that the lienholder has something new and different from its original judgment and mortgage and therefore it can foreclose on its lien only by a new and different legal proceeding, not upon the allegedly-extinguished November, 1982, judgment.

We have several difficulties with this analysis, not the least of which is that we see nothing in the Stipulation, quoted at page 689 *supra*, which indicates that the parties agreed that the sheriff's sale of January 3, 1983, was to be null and void on the basis of 11 U.S.C. § 548(a). Nothing in the Stipulation suggests the legal basis on which the parties agreed that the sale would be null and void. Moreover, the only fact tending to support the validity of the

Debtor's asserted cause of action under § 548(a) is the parties' agreement that the sale price of the Debtor's Premises was $2,162.04, which is certainly a modest enough figure. However, this figure appears to have arisen in a sheriff's sale to the foreclosing mortgagee or a party in privity thereto. Therefore, unless we know the value of the premises at the time of the sale, the liens cleared off by the sale, and the equity lost by the Debtor and Burch in the sale, it would be impossible to measure the merits of the Mortgagors' § 548(a) claim. *See In re Cole*, 81 B.R. 326, 330–31 (Bankr.E.D.Pa.1988).

However, the Debtor's asserted causes of action that the sale of January 3, 1983, was void on the basis of 11 U.S.C. § 362(a) and/or 11 U.S.C. § 549(a) appear to clearly have merit. A sheriff's sale in violation of the automatic stay, irrespective of the judgment creditor's knowledge of the stay, is void. *See In re Ward*, 837 F.2d 124, 126 (3d Cir.1988); *In re Stephen W. Grosse, P.C.*, 84 B.R. 377, 383 (Bankr.E.D.Pa.1988); and *In re Clark*, 69 B.R. 885, 889–90 (Bankr.E.D.Pa.1987). We believe that it is likely that HUD agreed to invalidate the sheriff's sale on the basis of this principle rather than on any argument based upon § 548(a).

As a result, we are unable to accept the Debtor's reasoning that the instant matter can be resolved by an interpretation of § 548(c). The only provision of the Stipulation addressing the parties' future rights is that provision (paragraph 5) which preserves FNMA's mortgage lien priority. Therefore, we are unfortunately left with a Stipulation which includes no clear statement of what the rights of the parties would be if there is a subsequent default by the Debtor and/or Burch, the latter of whom seems to have disappeared from the scene.

FNMA's position is that, since the parties only invalidated the sheriff's sale and left the judgment entered in the November, 1982, action, as well as its lien priority, intact, the judgment remains and can serve as the basis for execution upon a default in the Stipulation. The Debtor argues that a judicial sale divests all of the liens which existed at the time of the sale, and hence that the foreclosure judgment, and the mortgage merged into it, *see In re Herbert, Herbert v. FNMA*, 86 B.R. 433, 436–37 (Bankr.E.D.Pa.1988), ceased to exist after the sale, irrespective of the fact that the Stipulation invalidated the sale. *See United States v. Peterson*, 204 F.Supp. 683, 684 (E.D.Pa.1962); *Meco Realty Co. v. Burns*, 414 Pa. 495, 498, 200 A.2d 869, 871 (1964); and *West Branch Bank v. Chester*, 11 Pa. 282, 286 (1849).

We do not accept the foregoing arguments of either party. None of the cases relied upon by the Debtor involved a situation where, as here, a sheriff's sale was set aside and the judgment creditor and judgment debtor were litigating the status, between themselves, of the remaining judgment. It seems to us quite clear that, contrary to the Debtor's argument, the judgment remains intact. *See Cole, supra*, 81 B.R. at 331–32; and *In re Butler*, 75 B.R. 528, 533 (Bankr.E.D.Pa.1987), *aff'd*, C.A. No. 87–04455 (E.D.Pa. Dec. 18, 1987). The issue in the cases cited by the Debtor as quite distinct from that here: in *Peterson* and *West Branch*, it was the divestiture of other liens; in *Burns*, it was the post-sale right of the judgment creditor to seek a deficiency on the judgment.

However, we believe that there are several clear, fundamental reasons, not addressed by the parties, why FNMA cannot simply pick up the November, 1982, judgment and use it as a basis to enforce defaults in the Stipulation, as it seeks to do here.

The first is the rather elementary observation that a November, 1982, judgment must have been based upon defaults which occurred prior to and/or in November, 1982. However, under the Stipulation, the Debtor was not obliged to resume payments until November 1, 1985. Clearly, defaults which could not have occurred until three years thereafter could not have been the basis of the November, 1982 judgment.

A judgment is only a valid determination as to matters which have been raised in the complaint or other pleadings filed in the underlying action. *Reynolds v. Stockton,* 140 U.S. 254, 266, 270–71, 11 S.Ct. 773, 778, 35 L.Ed. 464 (1891); and *Webster Eisenlohr, Inc. v. Kalodner,* 145 F.2d 316, 318 (1944). Defaults arising in or after November, 1985, could not possibly have been a basis for a judgment entered on November 27, 1982.

It is inconceivable to us that the parties to the Stipulation and this court, approving same on January 30, 1986, meant to allow FNMA to utilize the November, 1982, judgment as a basis for proceeding to sale if FNMA unilaterally determined that the Debtor was subsequently in default of the Stipulation. A similar claim was rejected in *Berlin v. Aluisi,* 57 Md.App. 390, 470 A.2d 388 (1984). There, a judgment for possession and back rent due was entered in favor of a landlord. Pursuant to a state statute permitting a tenant to redeem a leasehold by tendering "all past due rent," costs, and late fees, MD. REAL PROPERTY ARTICLE, § 8–401(e), the tenant remitted all rent awarded in the judgment, plus fees and costs, to the sheriff's deputy. The sheriff determined that this payment was all that was necessary to effect a redemption. The landlord, however, argued that the tenant was further obliged to tender rent falling due after the entry of the judgment in order to redeem the tenancy. The court disagreed, pointing out that the tenant's liability for post-judgment rent had not been determined, and that the landlord's interpretation of the statute

> would render the statute [cited above] unconstitutional as a deprivation of the tenant's leasehold property without due process of law, since it would enable the landlord to oust the tenant by demanding rent not judicially determined to be due. *See North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); *Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); and *Sniadach v.*

*Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969).

470 A.2d at 397–98.

We agree. Utilizing a judgment previously obtained on the basis of certain pre-judgment defaults does not permit the judgment to be used as a basis for remedying other alleged post-judgment defaults which a court has not determined are actionable.

FNMA's attempt to utilize the November, 1982, judgment as a basis for remedying 1985 defaults is, in a sense, like attempting to enforce a pre-default "confessed judgment" against the Debtor. The due process deficiencies in such a process are, as they were to the *Berlin* court, obvious to us. *See In re Souders,* 75 B.R. 427, 433–38 (Bankr.E.D.Pa.1987). It is unclear whether the Debtor meant, in the Stipulation, to allow the November, 1982, judgment to stand as a mechanism to enforce post-November, 1985, defaults. Clarity on this point in the Stipulation would be necessary to effect the knowing, voluntary, and intelligent waiver of due process rights that would be necessary to argue that this procedure comported with the fifth and fourteenth amendments of the United States Constitution. *Compare Fuentes, supra,* 407 U.S. at 94–96, 92 S.Ct. at 2001–02. Moreover, as we pointed out in *Souders,* 75 B.R. at 438–39, Act 6 prohibits the use of confessed judgments in foreclosure proceedings. 41 P.S. § 407(a).

■ Furthermore, we note that the procedure utilized by FNMA here allows it to circumvent all of the significant protections established on behalf of residential mortgagors in both Act 6 and Act 91. Act 6 requires that a mortgagee provide certain notices and an opportunity to a mortgagor to cure any default prior to institution of an action to enforce its rights under a mortgage. *See, e.g., Main Line Federal Savings & Loan Ass'n v. Joyce,* 632 F.Supp. 9, 10 (E.D.Pa.1986); *In re Mosley, Mosley v. Meritor Mortgage Corp.-East,* 85 B.R. 942, 951–55 (Bankr.E.D.Pa., 1988); *Souders, supra,* 75 B.R. at 438–39; and *In re Schwartz,* 68 B.R. 376, 377–79 (Bankr.E.D.Pa.1986). Act 91 requires that a mort-

gagee provide a mortgagor with notice of a right to apply for a loan under the Homeowners Emergency Mortgage Assistance Act prior to commencing an action to enforce rights under a mortgage. *See generally In re Watts,* 76 B.R. 390, 393–94 (Bankr.E.D.Pa.1987).

We further note that the protections of these laws cannot be waived. 41 P.S. § 408; and 35 P.S. § 1680.402c(a). Therefore, even had the Stipulation expressly provided that FNMA could retain its November, 1982, judgment as an enforcement mechanism for post-Stipulation defaults, it would, in any case, have been obliged to dispatch the notices required by Act 6 and Act 91 to the Debtor before proceeding to schedule a sheriff's sale of her home.

■ One other provision included in Act 6 is also significant. That law provides that, when a debtor effects a cure of a default, this action "restores the residential mortgage debtor to the same position as if the default had not occurred." 41 P.S. § 404(c). The Stipulation approved by this court on January 30, 1986, effected a cure of the default which gave rise to the 1982 foreclosure suit. Thus, the Stipulation effectively restored the Debtor to the same position as if a default had not occurred, i.e., it eliminated the legal impact of the November 27, 1982, judgment. Therefore, on the basis of 41 P.S. § 404(c), also nonwaivable due to the presence of 41 P.S. § 408, FNMA would appear to be obliged to mark the November, 1982, judgment satisfied of record and not utilize it for any purpose, as it seeks to do here.

■ It is these precepts of state law and federal constitutional law, rather than the obscure and incorrectly-applied principles invoked by the Debtor, which we believe justify the most significant aspects of the relief sought by the Debtor. Since the November, 1982, judgment should be marked satisfied and may not serve as the basis for a sheriff's sale of the Debtor's property, we shall enjoin its enforcement for that purpose, as the Debtor requests. We believe that FNMA may enforce the Stipulation only by means of a new enforcement proceeding, commenced after full compliance with Act 6 and Act 91 and in full compliance with the precepts of due process of law.

■ In addition to seeking to reopen the bankruptcy of Burch and herself and this proceeding and to enjoin FNMA from conducting a sheriff's sale of the Premises pursuant to the November, 1982, judgment, the Debtor seeks to hold FNMA in contempt of this court's Order of January 30, 1986, in light of its scheduling the sheriff's sale of the Premises on the basis of this judgment. Although the Debtor alleges emotional suffering and financial detriment as a result of FNMA's actions, the record contains no evidence of same.

More importantly, we do not believe that the Stipulation and order of this Court approving it were sufficiently specific and definite in proscribing the action taken here by FNMA to merit any relief for contempt in favor of the Debtor. *Compare Inmates of Allegheny County Jail v. Wecht,* 754 F.2d 120, 128–29 (3d Cir.1985); *Frankford Trust Co. v. Allanoff,* 29 B.R. 407, 409–10 (E.D.Pa.1983); and *In re Hammett,* 28 B.R. 1012, 1019 (E.D.Pa.1983). Although we have found that there are no legal grounds for FNMA's attempt to use the November, 1982, judgment as a basis for proceeding against the Debtor, we note that our reasoning is completely different than that posited by the Debtor in her Brief, suggesting that it was not self-evident even to her precisely why FNMA's actions were improper. We have not required the Debtor to reimburse FNMA for its costs in proceeding on the November, 1982, judgment, in state courts. We believe that these expenditures constitute a sufficient financial sting to FNMA for proceeding improperly.

We shall therefore enter an Order granting the Debtor only the relief of reopening these matters and enjoining FNMA from proceeding against her on the basis of the November, 1982, this judgment.