In re Steven D. OWENS, Darlene M. Owens, Debtors.

Steven D. OWENS, Darlene M. Owens, Plaintiffs,

v.

FLEET MORTGAGE, Defendant.

Bankruptcy No. 91–10546S.
Adv. No. 91–0710S.

United States Bankruptcy Court,
E.D. Pennsylvania.

Oct. 10, 1991.

Jack K. Miller, Philadelphia, Pa., for debtors.

David B. Comroe, Philadelphia, Pa., for Fleet Mortg. Corp.

Edward Sparkman, Philadelphia, Pa., Standing Chapter 13 Trustee.

## ADJUDICATION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. FINDINGS OF FACT

1. STEVEN D. OWENS and DARLENE M. OWENS ("the Debtors") filed the Chapter 13 bankruptcy case underlying the above-captioned adversary proceeding ("the Proceeding") on February 1, 1991.

2. FLEET MORTGAGE, also known as Fleet Mortgage Corporation ("Fleet"), the Defendant in the above-captioned adversary proceeding, filed a secured proof of claim in the Debtors' main bankruptcy case on March 7, 1991, asserting that the arrearages on its claim, secured by a mortgage

on the Debtors' home at 607 East Thayer Street, Philadelphia, Pennsylvania 19134 ("the Premises"), were $5,152.06. No total amount due was stated on the claim, although statements were made thereon that Fleet had a judgment against the Debtors in the "approximate amount of $23,154.54," and that the principal balance remaining on the loan was $19,087.09.

3. The Complaint in the Proceeding averred that the total secured claim of Fleet against the Premises was only $10,000, and that the secured portion of Fleet's claim should be allowed in only that amount, pursuant to 11 U.S.C. §§ 506(a), (d).

4. On August 5, 1991, Fleet filed the other matter before us, a motion seeking relief from the stay to allow it to proceed to foreclose its mortgage against the Premises, pursuant to 11 U.S.C. § 362(d)(1) ("the 362 Motion"), on the ground that it had not received any post-petition payments from the Debtors.

5. On August 29, 1991, without Objection thereto, this court confirmed the Chapter 13 Plan of Reorganization filed by the Debtors on March 13, 1991 ("the Plan").[1] The Plan contemplated that the entire valid secured claim of Fleet, assumed to be $10,000, would be liquidated under the Plan through payments of $280 monthly to the Trustee for 60 months.

6. A consolidated trial of the Proceeding and the 362 Motion, after consensual continuances, was scheduled on a must-be-tried basis, and was in fact conducted, on October 1, 1991.

7. In the course of the trial, the parties stipulated that the gross amount of Fleet's valid total claim was the $23,154.54 figure recited as the "approximate amount" of its judgment against the Debtors on Fleet's proof of claim. The parties also agreed that the Debtors were entitled to a bifurcation of Fleet's total claim into secured and unsecured portions, pursuant to 11 U.S.C. §§ 506(a), (d), because the value of the Premises was less than the $23,154.54.

8. The Debtors' contention that the value of the Premises was only $10,000 was supported by an appraisal of the Premises performed on February 5, 1991, by Robert Gessler ("Gessler"), who testified at trial and indicated that his appraisal was performed, not in contemplation of this trial, but at the request of the Debtor–Wife's grandfather for some other undisclosed purpose. Fleet, meanwhile, contended that the secured portion of its claim should be based upon a $17,000 valuation arising from an appraisal of September 11, 1991, by its appraiser, Michael Frelove ("Frelove"), who also testified at the trial.

9. The only witness at trial other than the two appraisers was the Wife–Debtor ("the Wife"). While stating that the Debtors had paid $18,000 to purchase the Premises in February, 1989, the Wife testified that the Debtors had been overcharged. Further, the Wife graphically recited a series of undetected defects in the Premises, including a defective chimney and heating system which had caused permanent injuries to the Debtors' infant daughter and possibly herself from carbon monoxide poisoning;[2] leaks in the pipes leading to and from the bathroom; a defective electrical system; and thin, poor quality walls. She also stated that the Husband–Debtor, who installs heating systems, was in the process of installing a new, safe heating system in the Premises. However, this installation was not completed due to the Debtors' inability to afford parts, thus resulting in a lack of heat to the entire upper floor and part of the downstairs of the Premises, and

---

1. The Plan was deemed confirmable by the Trustee because the claims docket, in light of Fleet's failure to strictly comply with Local Bankruptcy Rule 3001.1(b), referenced Fleet's claim as only $5,152.06.

2. These unfortunate incidents have caused the Debtors to consult non-bankruptcy attorney to file a tort action against the sellers. We note that no such claim is listed as an asset on the Debtors' Schedules and the non-bankruptcy attorney has not been appointed as special counsel in this case, as appears necessary if that attorney is to be compensated for services. We therefore include, in our Order, a directive to the Trustee to investigate this matter and take whatever action may be appropriate as a result of his findings.

requiring the Debtors' family to stay with other family members on cold winter days.

10. Frelove is a state-certified appraiser who has been a licensed real estate broker since 1972, and testified that he had performed about 50–75 appraisals in the Kensington section of the City of Philadelphia, in which the Premises is located, in the past year. Gessler is associated with Louis A. Iatarola, a highly-regarded appraiser who often appears personally in this court. Although a long-time resident of Kensington, Gessler himself is not a state-certified appraiser and has been a licensed broker only since December, 1986.

11. Both appraisers utilized almost exclusively three comparable sales of homes in arriving at their respective opinions of valuation. However, Frelove utilized three sales which occurred between March, 1991, and June, 1991, and involved homes located within a block from the Premises, while Gessler utilized three sales occurring between May, 1990, and September, 1990, of homes which were four to eight blocks from the Premises. Neither appraiser reported any particular deficiencies in the Premises, although both reported that they had observed that a new heating system was only in the process of installation.

12. We find that Frelove's comparable sales were closer to the relevant time for valuation, *i.e.*, the confirmation date of August 29, 1991, *see In re Jablonski*, 88 B.R. 652, 657 n. 5 (E.D.Pa.1988); and *In re Blakey*, 76 B.R. 465, 467, *modified on other grounds*, 78 B.R. 435 (Bankr.E.D.Pa. 1987), and located closer to the Premises, and hence were more reliable indicia of the pertinent valuation, than those used by Gessler. However, we also find that Frelove underestimated the deficiencies in the Premises, particularly its seriously-defective and only half-repaired heating system. We also take into account the fact that Gessler, whose professional accomplishments are somewhat less impressive than those of Frelove, but who has superior knowledge of the Kensington neighborhood, set the valuation figure far lower in an appraisal not prepared, as was that of Frelove, in connection with this litigation.

13. Adjusting Frelove's figure of $17,000 downward by $2,000 to account for his overestimation of value causes us to conclude that the value of the Premises, as of the date of confirmation, was $15,000.

14. The Debtors' counsel indicated a willingness and a possible ability to amend the Debtors' confirmed Plan to conform to this court's decision in this proceeding if it resulted in a valuation of the Premises which was only slightly in excess of the $10,000 figure which they assumed in formulating their confirmed Plan. However, since the figure which has resulted is quite significantly more than $10,000, we are somewhat skeptical of their ability to do so.

15. There was no evidence that the Debtors failed to make any of the requisite payments due under the Plan.

## B. CONCLUSIONS OF LAW

1. As Fleet is compelled to concede, the Debtors, by means of the Proceeding, are entitled to bifurcate Fleet's total claim into a secured claim to the extent of the value of its interest in the interest of the Debtors' estate in the Premises, and an unsecured claim as to the balance of its total allowed claim, pursuant to 11 U.S.C. §§ 506(a), (d). *See, e.g., Wilson v. Commonwealth Mortgage Corp.*, 895 F.2d 123, 128–29 (3d Cir.1990).

2. We have stated that we believe that the value of the Premises, which constitutes the secured portion of Fleet's claim, is $15,000. The unsecured portion of Fleet's claim is the difference between the $23,154.54 agreed total claim of Fleet, less the $15,000 secured portion, or $8,154.54.

3. The fact that the Proceeding was not tried and decided (although it was filed) prior to confirmation of the Debtors' Plan does not render it untimely, and thus, alter the propriety of the relief allowable to the Debtors under § 506(d). *See In re Lewis*, 875 F.2d 53, 57 (3d Cir.1989) (§ 506(d) motion filed seven months after confirmation is not untimely).

4. On the other hand, the Debtors cannot equitably maintain that Fleet should be bound to the implicit assumption of a $10,-

000 valuation of the Premises which underlay their Plan. Decisions in other circuits suggest that a debtor cannot bind an undersecured creditor to a valuation figure assumed in a plan by merely obtaining confirmation of the plan. *See In re Calvert*, 907 F.2d 1069, 1972 (11th Cir.), *reh'g denied*, 917 F.2d 570 (11th Cir.1990) (en banc); and *In re Hobdy*, 130 B.R. 318, 320–21 (9th Cir. BAP 1991).

5. We conclude, in agreement with the concurring Opinion in *Hobdy, supra*, 130 B.R. at 322, that "[s]ections 502(a) and 1327(a) [of the Bankruptcy Code] may be harmonized by interpreting § 1327(a) as dictating that the plan binds the parties to the amount the trustee will distribute under the plan, but is not binding as to the amount of the claim." Therefore, if the Debtors so choose, they can retain their present Plan, but will be left, after discharge, with Fleet's having a residual security interest against the Premises in excess of that satisfied by the trustee's distribution. *See* 11 U.S.C. § 1322(b)(5). However, they could, as on the alternative to maintaining their present Plan, move to amend their confirmed Plan and attempt to liquidate the entire allowed secured claim of Fleet in such an amended plan. *See In re Gronski*, 86 B.R. 428, 432 (Bankr. E.D.Pa.1988) (debtor has a broad power to amend a Chapter 13 plan post-confirmation for cause).

 6. In light of the foregoing conclusions, we find that the 362 Motion must fail. Once a Chapter 13 plan is confirmed, a secured creditor whose claim is provided for in, and whose claim is being paid within the context of, the plan can obtain relief only by showing that the debtor has substantially defaulted in performances due under the terms of the plan. *See In re Smith*, 104 B.R. 695, 699–700 (Bankr. E.D.Pa.1989). Fleet's claim is provided for, at least in part, in the Plan, and it has not proven any failure to conform to the terms of the Plan by the Debtors.

## C. ORDER

AND NOW, this 10th day of October, 1991, after trial of the above-captioned adversary proceeding on October 1, 1991, and upon careful consideration of the evidence presented and review of pertinent authorities, it is hereby ORDERED and DECREED as follows:

1. Judgment is entered in part in favor of the Debtors, STEVEN D. OWENS and DARLENE M. OWENS ("the Debtors"), and against the Defendant, FLEET MORTGAGE ("Fleet").

2. Fleet is allowed a total secured claim of $15,000, and an unsecured claim of $8,154.54 in the Debtors' bankruptcy case.

3. Fleet's 362 Motion is DENIED.

4. The Trustee is directed to investigate the circumstances of the Debtors' potential tort action, *see* pages 295–96 & n. 2 *supra*, and take appropriate action in light of same.