**In re Alfred R. LUFF, Debtor.**

**In re Mary LUFF, Debtor.**

**Mary LUFF, Plaintiff,**

**v.**

**AMERICAN GENERAL FINANCE, INC., Defendant.**

**AMERICAN GENERAL FINANCE, INC., Successor in Interest to GFC Consumer Discount Company, Plaintiff,**

**v.**

**Alfred R. LUFF, Doris R. Luff and Mary Jane Luff, Defendants.**

**Bankruptcy Nos. 87–00074 DAS, 94–15756 DAS.**

**Adv. Nos. 94–0854 DAS, 94–0969 DAS.**

United States Bankruptcy Court, E.D. Pennsylvania.

Jan. 11, 1995.

---

Scot W. Semisch, Willow Grove, PA, for debtors.

Gregory Javardian, Philadelphia, PA, for American General Finance, Inc.

Patricia L. Bachtle, Prothonotary, Doylestown, PA.

Edward Sparkman, Chapter 13 trustee, Philadelphia, PA.

### OPINION

DAVID A. SCHOLL, Chief Judge.

### A. INTRODUCTION

Resolution of the instant proceedings and related motions, presented to this court on a Stipulation of Facts, ultimately turns on an analysis of the effect, on the Debtor's present case, of a Chapter 13 discharge of her husband ("the Husband") in a prior Chapter 13 case of his own. We find that, while the Husband's case discharged his personal obligation to the Mortgagee of property which he deeded to the Debtor pre-petition, it did not affect the rights of the Mortgagee as to the Debtor. We therefore decline to provide any relief to the Debtor, although we will grant the Husband's motion to reopen his case to entertain an action against the Mortgagee for its post-confirmation joinder of the Husband in a mortgage foreclosure suit in alleged violation of the discharge injunction entered in his case.

## B. FACTUAL AND PROCEDURAL HISTORY

MARY LUFF ("the Debtor") filed an individual Chapter 13 bankruptcy case on September 7, 1994. On September 22, 1994, she filed a plan providing, *inter alia*, as follows:

> The amount paid to the Trustee shall be the sum of $145.00 if Debtor's Motion To Remove her Creditor's Debt is not approved. If it is approved, there shall be no payments and the case will be withdrawn.

> . . . . .

> American General Finance ["the Mortgagee"] shall be paid out of the sale of Debtor's residence and the payments made to the Trustee....

A confirmation hearing in the Debtor's case has been scheduled on February 21, 1995.

The Debtor and her husband, ALFRED R. LUFF ("the Husband"), have filed several matters presently before us to attempt to effect "removal" of the Mortgagee's debt, as referenced in the plan. The first matter, filed on October 24, 1994, was an adversary proceeding (Adversary No. 94–0854DAS) ("the New Proceeding"), requesting this court to order the Mortgagee to "withdraw" its contemplated proof of claim based on an October 26, 1993, mortgage foreclosure judgment entered against the Debtor, the Husband, and the Husband's deceased first wife, DORIS R. LUFF ("the Decedent"), in Case No. 92–010131–05–1 in the Bucks County Court of Common Pleas ("the Bucks Case" and "the Bucks Court," respectively). The second matter, filed on October 17, 1994, was a motion to reopen the Husband's Chapter 13 case ("the Motion to Reopen"), which had been filed on January 5, 1987, at Bankruptcy No. 87–00074T ("the Husband's Case"), and had been closed on November 3, 1992, after the Husband's post-confirmation discharge had been entered. The third matter, filed on December 5, 1994, was an "Application for Removal" of the Bucks Case to this court (Adversary No. 94–0969DAS) ("the Removal Proceeding").

By Order of December 12, 1994, this court directed the Debtor to submit a Notice of Removal in conformity with Federal Rule of Bankruptcy Procedure ("F.R.B.P.") 9027(a) by December 14, 1994, and set down a status conference of the Removal Proceeding with the scheduled trial of the New Proceeding on December 15, 1994.

At that trial and status conference, we became aware of the Motion to Reopen, which had been listed for a hearing on January 10, 1995, in the Reading Division of the court, since the residence of the Debtor and the Husband (collectively "the Debtors") was at all pertinent times in Bucks County, and cases from that County were venued in the Reading Division of this court prior to the addition of two new Philadelphia-based judgeships in fall 1993. It was agreed that the hearing on the Motion to Reopen the Husband's Case and the file of that Case would be transferred to this court in the Philadelphia Division and that the parties would file the following: (1) the Mortgagee, a motion to remand the Removal Proceeding by December 30, 1994; (2) both parties, a Stipulation of Facts ("the Stipulation") relevant to all of these matters by December 30, 1994; and (3) both parties, Briefs supporting their respective positions on all outstanding matters by January 6, 1995. By Order of December 16, 1994, these agreements were memorialized and a hearing/trial on any outstanding factual issues in any of the matters at issue was scheduled in this court on January 10, 1995.

We have all of the materials referenced in the December 16, 1994, Order in hand. On January 3, 1995, the Debtor and the Husband also filed a motion to consolidate their respective bankruptcy cases ("the Motion to Consolidate").

The comprehensive Stipulation, as supplemented by a brief hearing of January 10, 1995, established the following relevant facts. On August 27, 1982, the Husband and the Decedent executed a note and mortgage on their then marital residence at 108 New Road, Southampton, Pennsylvania ("the Home") with the predecessor of AMERICAN GENERAL FINANCE, INC. ("the Mortgagee") in connection with a loan in the amount of $19,746.02. On January 5, 1987, the Husband's Chapter 13 bankruptcy Case was filed. The Mortgagee's predecessor filed a proof of claim in the Husband's Case

in the sum of $18,845.39. The Husband's Chapter 13 plan ("the Husband's Plan"), contemplating payment of the allowed secured claim of $18,845.39 in full, was confirmed on February 16, 1989. After successful completion of its terms, this court entered an Order discharging the Husband.

Nevertheless, in November 1992, the Mortgagee filed the Bucks Case, naming the Husband, as well as the Debtor and the Decedent, as defendants. The Debtor is the present wife of the Husband and became the sole owner of the Home by a transfer of the Home into her name in 1985. After completion of certain discovery in the Bucks Case, the Mortgagee filed a motion for summary judgment in that Case. When no response was offered to this motion, raising either the presence of the discharge in the Husband's Case or any other defense, which the Husband, at the hearing, attributed to inadequate representation by his counsel in that case,[1] the Mortgagee obtained the judgment of October 26, 1993, against all three named defendants in the amount of $32,491.95, plus interest.

Although the bar date for filing claims in the Debtor's Case is February 14, 1995, and the Mortgagee has not yet filed a proof of claim, all parties obviously contemplate its filing a claim based upon the aforesaid judgment in the Bucks Case. By way of explanation for the discrepancy between the amount of its proof of claim in the Husband's Case and its much larger demand in the Bucks Case, the Mortgagee suggests that it forgot to add in pre-petition interest in computing the amount of its claim in the Husband's Case.

## C. DISCUSSION

### 1. THE HUSBAND'S DISCHARGE HAS NO EFFECT ON THE MORTGAGEE'S LIEN ON THE HOME AS TO THE DEBTOR.

In their Brief of January 6, 1995, at page 4, the Debtors offer the following assertions:

The confirmation of ·[the Husband]'s Plan, his discharge and the fact that he paid the mortgagee in full under his Plan removed the lien from the Real Estate.

The confirmation of [the Husband]'s Plan and his discharge vested the Real Estate in [the Debtor]. 11 U.S.C. § 1327(b) states that:

"Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor."

[The Husband]'s Plan was confirmed, he made all of his plan payments and he received a discharge from . the Court. Therefore, according to the terms of his Plan and section 1327(b), the Real Estate vested in Debtor or his transferee.

We cannot agree with all of these assertions, which are, notably, not supported by any case citations.

We do agree that, as to the Husband, the Mortgagee is bound by the terms of his confirmed Plan. *See In re Szostek,* 886 F.2d 1405, 1408–14 (3d Cir.1989). This result follows even if we accept the Mortgagee's contention that it made certain errors in computing its claim in the Husband's case. *See In re Brown,* 76 B.R. 1013 (Bankr.E.D.Pa. 1987) (mortgagee bound to terms of a confirmed plan in which its treatment was based on a claim which mistakenly related to another person by the same name).

However, it is apparent that the Husband was not the owner of the Home at the time of confirmation of his Plan, since the transfer occurred "between 1982 and 1987," and the Husband's Plan was not confirmed until 1989. Further, it is unlikely that the transfer occurred post-petition, *i.e.,* prior to January 5, 1987, since no court permission for this transfer was sought or obtained. *See In re Cavalieri,* 142 B.R. 710, 714–18 (Bankr. E.D.Pa.1992) (post-petition transfer of property out of the ordinary course is violative of

---

1. We were unwilling to accept this indictment of counsel without qualification, since counsel was an experienced bankruptcy attorney. In any event, the Debtors cannot obtain relief from the Bucks Case judgment on the ground that their counsel-agent did not act properly on their be-

half. *See Pioneer Investment Services Co. v. Brunswick Associates, L.P.,* —— U.S. ——, ——, 113 S.Ct. 1489, 1499, 123 L.Ed.2d 74 (1993) ("clients must be held accountable for the acts and omissions of their attorneys").

11 U.S.C. § 363(b) and may be avoided). In his Plan, the Husband identified the Mortgagee's predecessor as his secured creditor, a second mortgagee of the Home. There was no indication that the Husband was not still an owner of the Home. It appears that the Mortgagee was unaware of the transfer to the Debtor. In any event, both parties treated the indebtedness in the Plan as if the Home still belonged to the Husband.

While it is true that, pursuant to Code § 1327(b), confirmation of a debtor's Chapter 13 plan vests all property of the estate in the debtor, it is rather clear that title to the Home was not property of the Debtor's estate at the time of confirmation. There is nothing in the Code nor logic suggesting that property transferred by a debtor prior to confirmation vests in the debtor, nor that it vests in the non-debtor transferee by reason of another party's bankruptcy filing.

■ We believe that it is true that a secured creditor is bound, post-confirmation, to the terms of a confirmed plan. Moreover, irrespective of the Supreme Court's decisions in *Nobelman v. American Savings Bank,* — U.S. —, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993); and *Dewsnup v. Timm,* 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), a debtor whose confirmed plan purports to pay off a secured claim entirely or cure arrearages on that claim should be able to enforce the plan's terms against the secured creditor, including elimination of the creditor's lien if the claim is paid off in full in the plan, outside of bankruptcy. *See In re Gelletich,* 167 B.R. 370, 377 (Bankr.E.D.Pa.1994); *In re McDonough,* 166 B.R. 9, 14–15 (Bankr. D.Mass.1994); and *In re Taras,* 136 B.R. 941, 949–50 (Bankr.E.D.Pa.1992). *But see In re Hernandez,* 162 B.R. 160, 166–67 (Bankr. N.D.Ill.1993) (in light of *Nobelman* and *Dewsnup,* a secured claim may survive despite payment of the full secured claim in a plan). However, if no direct action is taken by the debtor during the course of the bankruptcy to affect the secured creditor's claim, it will pass through the bankruptcy unaffect-

ed. *See Gelletich, supra,* 167 B.R. at 377–80; *In re Fewell,* 164 B.R. 153, 156–57 (Bankr. D.Colo.1993); and *In re Owens,* 132 B.R. 293, 296–97 (Bankr.E.D.Pa.1991). *See also Hernandez, supra,* 162 B.R. at 166–67. This result may occur even if the plan does provide for the claim, but no action challenging the amount of the claim is filed. *See Owens, supra,* 132 B.R. at 296–97. *But see In re Wolf,* 162 B.R. 98, 105–08 (Bankr.D.N.J. 1993).

Therefore, were the Debtor's argument being made by the Husband seeking to retain the Home in his own name or by a post-petition transferee of the Home, it would be valid. However, it is being made here by a non-debtor to the Husband's Case whose interests in the Home arose pre-confirmation. Therefore, the Debtor is not aided by the developments relevant to the Plan in the Husband's Case. *See also In re Young,* 76 B.R. 504 (Bankr.E.D.Pa.1987) ("*Young II*") (discharge of debtor does not protect the interests of a post-confirmation, pre-discharge transferee of a debtor's property from state court orders entered while the bankruptcy was pending after relief from the automatic stay was granted).[2]

■ Hence, we conclude that the Debtor's assertions regarding the affect of the Husband's Case upon the Mortgagee's claim against her in her bankruptcy case, which are the substance of the New Proceeding, must fail. A judgment must therefore be entered in favor of the Mortgagee in the New Proceeding. Several other results follow from this decision.

2. *THE BUCKS CASE MUST BE REMANDED BECAUSE IT ATTEMPTS TO INVOLVE THIS COURT IN AN ATTACK ON A FINAL STATE JUDGMENT.*

■ The Mortgagee has filed a motion within the timeframes set forth in our Order of December 16, 1994, seeking to remand the Bucks Case to the Bucks Court from which it was removed. In analyzing this Motion, we

---

**2.** Several of the pertinent facts of *Young II* can be gleaned only by reference to an earlier decision allowing the debtor's case to be reopened for the subsequent transferee to assert her ulti-

mately unsuccessful attack of a state court foreclosure judgment reported at 70 B.R. 968, 969–70 (Bankr.E.D.Pa.1987) ("*Young I*").

began from the premise that all doubts about whether a removed case should be remanded must be resolved in favor of a remand. *See Boyer v. Snap–On Tools Corp.,* 913 F.2d 108, 111 (3d Cir.1990), *cert. denied,* 498 U.S. 1085, 111 S.Ct. 959, 112 L.Ed.2d 1046 (1991); *In re West Coast Video Enterprises, Inc.,* 145 B.R. 484, 487 (Bankr.E.D.Pa.1992); and *In re RCS Properties, Inc.,* 1992 WL 22190, slip op. at * 2 (Bankr.E.D.Pa. Feb. 3, 1992).

We must also observe that this court has consistently remanded state court cases which have advanced past the state of entry of judgments, even when the judgments have been attacked in the state courts, and even when the relief sought is most significant to a bankruptcy case and can be analogized to a cause of action authorized by the Bankruptcy Code. *See In re Warren,* 125 B.R. 128, 132–33 (E.D.Pa.1991). *See also In re Taylor,* 115 B.R. 498, 501–02 (E.D.Pa.1990); *RCS Properties, supra,* slip op. at * 2 (confessed judgments); and *In re Sciortino,* 114 B.R. 423, 427 (Bankr.E.D.Pa.1990).

■ The Remand Proceeding was decided by the State Court over a year ago. It was not appealed or otherwise challenged. The judgment is therefore obviously final and binding on this court. *See, e.g., Heiser v. Woodruff,* 327 U.S. 726, 733, 66 S.Ct. 853, 856, 90 L.Ed. 970 (1946); *In re Kovalchick,* 175 B.R. 863, 871–74 (Bankr.E.D.Pa.1994); and *In re Garafano,* 99 B.R. 624, 629–30 (Bankr.E.D.Pa.1989). There has not even been a motion attacking the judgment filed in the State Court or in this court. There is, therefore, no purpose to be served by removal of the Bucks Case to this court. The Mortgagee's motion to remand the Motion must therefore be granted.

3. *THE HUSBAND'S CASE WILL BE REOPENED TO ALLOW HIM TO PURSUE A CLAIM THAT THE LITIGATION OF THE STATE CASE AGAINST HIM VIOLATED THE DISCHARGE INJUNCTION ENTERED IN HIS CASE.*

Although the foregoing discussions may eliminate the claims of the Debtor based on developments in the Husband's Case, they do not detract from the Husband's own claims for violation of the discharge injunction arising from his discharge in his own Case. It is clear that the Mortgagee joined the Husband as one of the Defendants in the Bucks Case and proceeded to obtain a judgment against, *inter alia,* him personally, in the amount of $32,491.95 plus interest, even though the Mortgagee's claim against him had been discharged in his Case.

■ As is established in *In re McNeil,* 128 B.R. 603, 606–08 (Bankr.E.D.Pa.1991), and cases cited therein, even though the Mortgagee's lien and claims against non-debtors survive the Husband's discharge, any attempt of the Mortgagee to pursue a claim against the Husband personally is violative of the discharge injunction arising from 11 U.S.C. § 524(a). As we noted at pages 380–81 *supra,* we decline to accept the Mortgagee's arguments that it can pursue the Husband for claims overlooked or erroneously omitted from its proof of claim in the Husband's Case. As to the Husband, the Mortgagee was bound to accept the terms of his confirmed plan, which liquidated the Mortgagee's entire secured claim, as filed, in full. Even considering the decisions in *Nobelman* and *Dewsnup,* which the Mortgagee does not invoke, the result of *McNeil* and the other cases cited in *McNeil* in favor of the Husband's right to assert a violation of the discharge injunction remain unchanged.

We are not prepared to address the subject of to what relief the Husband might be entitled as a result of this conclusion. It is very doubtful that any recourse which the Husband could have would be sufficient to achieve the aim of the Debtors to whittle the Mortgagee's claim in the Debtor's case down to the size of the claim filed in the Husband's Case. But it might prove to provide some leverage to the Debtors in reaching an amicable accommodation with the Mortgagee.

In any event, the Husband is entitled to reopen his Case for this purpose and, though the relief to which he is entitled as a result of such a request may be limited, we will grant the Motion to Reopen. *See McNeil, supra,* 128 B.R. at 606, 618; *In re Burch,* 88 B.R. 686, 689–91 (Bankr.E.D.Pa.1988); and *Young I, supra,* 70 B.R. at 970–73.

**4.** *THE MOTION TO CONSOLIDATE WILL BE DENIED, SINCE THE VERY DIFFERENT STATUSES OF THE CASES OF THE DEBTOR AND THE HUSBAND PRECLUDE THEIR COMMON ADMINISTRATION.*

The Motion to Consolidate is based upon 11 U.S.C. § 302(a) and F.R.B.P. 1015(b), the latter of which provides as follows:

> **(b) Cases Involving Two or More Related Debtors.** If a joint petition or two or more petitions are pending in the same court by or against (1) a husband and wife, ..., the court may order a joint administration of the estates. Prior to entering an order the court shall give consideration to protecting creditors of different estates against potential conflicts of interests....

 However, F.R.B.P. 1015(b) is permissive, not mandatory. 8 COLLIER ON BANKRUPTCY, ¶ 1015.04, at 1015–5 (15th ed. 1994). Usually such motions would be granted as to two cases which were filed reasonably contemporaneously with each other, to permit such significant administrative events as the meetings of creditors and confirmation or discharge hearings, if deemed necessary, to proceed in lock-step. *See id.*

Here, we have the Husband's Case, in which all administrative events have long since occurred, and only a proceeding seeking to enforce the discharge injunction is remaining. Meanwhile, the Debtor's Case, assuming that she does not proceed to "withdraw" it as she indicated she would do if she succeeded in the New Proceeding (which she did not) must proceed through the long road from confirmation and discharge. We perceive potential confusion to the Husband's creditors if his case is not only reopened, but is placed back on any sort of track with that of the Debtor. It is impossible to move the Debtor's case forward to the point of the Husband's Case. While we will of course attempt to list any matters which raise common issues on the same dates in the Debtors' respective cases together, we believe that it would be inappropriate to join these two cases, either substantively or administratively, given their very different postures.

**D. CONCLUSION**

An Order consistent with the conclusions explained and described in the foregoing Opinion will be entered.

*ORDER*

AND NOW, this 11th day of January, 1995, after receipt of a Stipulation of Facts and a colloquy with counsel in reference to the Debtor's Motion to Reopen Bankruptcy No. 87–00074T ("the Motion to Reopen"), the Motion of both Debtors to consolidate their respective cases ("the Motion to Consolidate"), and the above two proceedings on January 10, 1995, and upon consideration of the parties' respective Briefs submitted on January 6, 1995, it is hereby ORDERED as follows:

1. The Motion to Reopen is GRANTED. The Debtor in that case shall, however, be obliged to file any motion to enforce the discharge injunction in this case on or before February 10, 1995, or this case shall be reclosed. This case is reopened solely for that purpose.

2. The Motion to Consolidate is DENIED.

3. Judgment is entered in favor of the Defendant, AMERICAN GENERAL FINANCE, INC. ("the Mortgagee") and against the Plaintiff–Debtor, MARY LUFF ("the Debtor"), in Adversary No. 94–0854DAS.

4. The Motion of the Mortgagee to remand Adversary No. 94–0969DAS to the Court of Common Pleas of Bucks County ("the Bucks Court") is GRANTED. The Clerk of this court shall remit the record in Case No. 92–010131–05–1 to the Prothonotary of the Bucks Court eleven (11) days after entry of this Order unless this Order is appealed from or otherwise stayed.